## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN ZIRPOLI, individually and :    Civil No. 1:19-CV-01428
on behalf of all others similarly situated, :
                                  :
         Plaintiff,               :
                                    :
         v.                    :
                                    :
MIDLAND FUNDING LLC and      :
MIDLAND CREDIT MANAGEMENT, :
INC.,                                   :
                                    :
         Defendants.        :     Judge Jennifer P. Wilson

## <u>ORDER</u>

This putative class action proceeds via complaint filed by Plaintiff, Benjamin Zirpoli ("Zirpoli"). The action arises out of allegedly improper and unlawful debt-collection activities by Defendants, Midland Funding LLC ("Midland Funding") and Midland Credit Management, Inc. ("Midland Credit") (collectively "Midland"). Before the court is Midland Funding's motion to compel individual arbitration and to stay these proceedings. (Doc. 18.) Because it is not apparent from the face of the complaint that Zirpoli's claims are subject to an enforceable arbitration agreement, and factual development is otherwise necessary on Zirpoli's arguments, the court will deny Midland Funding's motion. This denial will be without prejudice to Midland Funding renewing its motion for consideration under the summary judgment legal standard after limited discovery is completed.

BACKGROUND

## 1.  The Complaint

On August 16, 2019, Zirpoli, individually and on behalf of a putative class, initiated this action by filing a complaint against Midland.  (Doc. 1.)  Zirpoli alleges the following facts.

In March 2018, Midland filed a lawsuit against Zirpoli in a Pennsylvania state court.  Midland sought to recover debt on a loan account that Midland had purchased from "OneMain Financial" (the "Loan Account" or "Account").  (Doc. 1, ¶¶ 13–14.)  After being served with the lawsuit, Zirpoli retained an attorney and entered a defense.  (*Id.* ¶ 15.)  Before a hearing, however, Midland dismissed the lawsuit.  (*Id.* ¶ 16.)

Despite the dismissal, Midland continues to report the debt on the Loan Account to consumer-reporting agencies.  (*Id.* ¶ 17.)  Additionally, in or around April 2019, Midland obtained and used Zirpoli's credit report.  (*Id.* ¶ 18.)  In Zirpoli's view, Midland's debt-collection activities, including the procurement and use of his credit report, are unlawful and impermissible.  Zirpoli avers that Midland was not lawfully permitted to purchase the Loan Account in the first place.  (*Id.* ¶ 20.)

With respect to this point, Zirpoli alleges that OneMain Financial is a consumer-discount company regulated by the Pennsylvania Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 6201, et seq. (*Id.* ¶ 21.)  Meanwhile, Midland admittedly does not similarly hold a CDCA license.  (*Id.* ¶ 25; *see* Doc. 14, ¶ 25.)  Thus, Zirpoli avers that, under the CDCA, the purchase of the Loan Account, or similar accounts, from OneMain Financial is unlawful, and the underlying obligations are void.  (*Id.* ¶¶ 27, 32.)  According to Zirpoli, it follows that Midland cannot lawfully engage in debt-collection activities on such accounts. (*See id.* ¶¶ 29–32.)  By allegedly doing so, however, Zirpoli claims that Midland has violated his rights and the rights of those similarly situated to him.  (*Id.* ¶ 33.)

More precisely, Zirpoli claims that Midland violated the Fair Debt Collection Practices Act (Count I), the Fair Credit Reporting Act (Count II), Pennsylvania's Fair Credit Extension Uniformity Act (Count III), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count IV). (Doc. 1.)  In addition to the request for class certification and a declaratory judgment finding that Midland's conduct was unlawful, Zirpoli requests actual, statutory, treble, and punitive damages.  (Doc. 1, p. 10.)[1]  Zirpoli also requests attorneys' fees and costs.  (*Id.*)

---

[1] Where appropriate and for ease of reference, the court utilizes the page numbers from the CM/ECF header.

**2. Midland Funding's Motion To Compel Individual Arbitration And Stay These Proceedings**

On November 18, 2019, after Midland filed an amended answer, Doc. 14, Midland Funding filed the instant motion to compel individual arbitration and stay these proceedings. (Doc. 18.) Contemporaneously with the motion, Midland Funding filed a supporting brief. (Doc. 19.) Midland Funding also attaches exhibits to its motion, including a copy of a purported "Disclosure Statement, Note, and Security Agreement" (the "Note") between Zirpoli and OneMain Financial, Inc. ("OneMain"). (Doc. 18-3.; *but see* Doc. 18-1, ¶ 3 (Midland Funding otherwise declaring that the Loan Account was obtained from OneMain Financial Group, LLC); Doc. 21-3 (averring in the state-court lawsuit against Zirpoli that the Loan Account was obtained from "OneMain Fin B3 Warehouse")).) The Note incorporates a separate Arbitration Agreement: "Borrower . . . and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of [the Note] by this reference." (Doc. 18-3, p. 4.) Midland Funding further attaches a purported copy of the incorporated Arbitration Agreement. (Doc. 18-2.)

As well, Midland Funding references and attaches a copy of a "Bill of Sale and Assignment" (the "Bill of Sale"), "Affidavit of Sale of Account," and a "Forward Flow Purchase and Sale Agreement" (the "Sale Agreement"). (Docs. 18-4, 18-5, 18-6.) The Bill of Sale, in relevant part, provides that OneMain,

OneMain Financial Group, LLC, OneMain Financial Services, Inc., and OneMain Financial (HI), Inc. (the "OneMain Entities") agreed to "transfer, sell, assign, convey, grant, bargain, set over and deliver" "Accounts" to Midland Funding and its "successors and assigns." (*See* Doc. 18-4.)  The Loan Account was supposedly among the "Accounts." (*See* Doc. 18-1, ¶ 8.)  After Midland Funding allegedly purchased the Loan Account, it engaged Midland Credit as servicer of the Account to recover the outstanding balance. (*See* Doc. 18-1, ¶ 3.)

The term "Accounts" in the transaction between the OneMain Entities and Midland Funding was defined in the Sale Agreement that "govern[ed] the ownership of . . . Zirpoli's Account." (Doc. 18-1, ¶ 12.)  "Accounts" referred to charged-off "accounts and receivables." (Doc. 18-6, p. 2; *see also* Doc. 18-4, p. 2.)

Pertinent text of the Sale Agreement also provides that Midland Funding was only permitted to use account documents "for the purpose of lawful recovery on an Account, and for the purpose of defending any claim, suit, action or other third party proceeding instituted against [Midland Funding] or its affiliates." (*Id.* at 11.)  Midland Funding was restricted from "initiat[ing] an arbitration proceeding in a collection action against an Obligor or any other dispute with an Obligor based on a provision in an Account Document authorizing arbitration without the prior written approval of [the OneMain Entities]." (Doc. 18-6, p. 15.)  Relatedly, Midland Funding was required to give prior written notice to the OneMain Entities

if it "otherwise initate[d] an arbitration action in a dispute with a (sic) Obligor based on a provision in an Account Document authorizing arbitration." (*Id.*)

Midland Funding, moreover, could not "represent that there is an affiliation or agency relationship" with the OneMain Entities or "state or represent in any way that it is [(or was)] acting for or on [the OneMain Entities'] behalf." (*Id.* at 16.) Based on the terms of the Arbitration Agreement, as well as the documents related to the supposed purchase and assignment of the Loan Account, Midland Funding now pursues individual arbitration with Zirpoli under the Federal Arbitration Act ("FAA"). (*See* Docs. 18, 19.)

On December 2, 2019, Zirpoli filed a brief in opposition to Midland Funding's motion. In his brief, Zirpoli first contends that any assignment of the Loan Account (including any arbitration right) from OneMain Financial to Midland Funding is legally unenforceable under the CDCA because Midland Funding is not a licensed consumer-discount company and has not produced evidence demonstrating that the Secretary of the Pennsylvania Department of Banking otherwise approved the transaction. (Doc. 20, pp. 12–15.) Second, Zirpoli points to the language in the Sale Agreement. The relevant language, according to Zirpoli, precludes Midland Funding from compelling arbitration without approval from OneMain Financial (or any of the other OneMain Entities), and such approval does not presently exist in the record. (*Id.* at 16.) Third, based

6

on inconsistencies in the current record as to which OneMain company held and sold the Loan Account to Midland Funding, Zirpoli argues that the record evidence fails to demonstrate chain of title to the Loan Account, without which Midland Funding cannot compel arbitration.  (*Id.* at 17.)

After Zirpoli filed his brief in opposition, Midland Funding filed a timely reply brief.  (Doc. 24; *see* Doc. 23.) The court then ordered the parties to file supplemental briefs to address the following issue: "Despite the purported delegation clause [in the Arbitration Agreement], must the court still decide whether an arbitration agreement exists (i.e., whether Midland is a party to the arbitration agreement) before ordering any arbitration?" (Doc. 26.)  Consistent with the court's order, the parties timely filed their supplemental briefs.  (Docs. 29, 30.)  The motion is now ripe for review.

## DISCUSSION

### A.    Determination Of The Proper Framework For Analysis

The FAA provides the "body of federal substantive law establishing . . . the duty to honor agreements to arbitrate disputes."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009).  Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 requires courts, upon motion, to stay litigation  "upon being satisfied that" the issues involved are "referable to arbitration" under a written arbitration agreement.  *Id.* § 3.  The stay shall remain in effect until the arbitration, in accordance with the arbitration agreement, concludes.  *See id.*  Furthermore, under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written [arbitration] agreement . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.

Generally, "in deciding whether a party may be compelled to arbitrate under the FAA, [courts must] consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem.*, 584 F.3d at 527).  The legal standard that applies to motions to compel arbitration depends on the circumstances.  *HealthplanCRM, LLC v. AvMed, Inc.*, --- F.Supp.3d ----, 2020 WL 2028261, at *3 (W.D. Pa. Apr. 28, 2011).

District courts review motions to compel arbitration under the rubric of either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit provided guidance on when each standard applies.

The Third Circuit explained that "when it is apparent, based on 'the face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause,' a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Conversely, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, <u>or</u> if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question [under the Rule 56 standard].'" *Id.* (emphasis added) (first alteration in original). Thereupon, if summary judgment is not warranted, the court may proceed summarily to a trial. *Id.* (quoting 9 U.S.C. § 4).

Here, neither party expressly advocates for the court to apply a particular legal standard.  In its reply brief, Midland Funding mentions *Guidotti* and merely asserts that, if the court believes that Zirpoli's arguments raise sufficient doubt about the arbitrability of his claims, the court should not deny the motion; rather, the court should permit limited discovery.  (Doc. 24, pp. 9–10.)  Zirpoli recognizes the guidance from *Guidotti*.  But he too does not advocate for application of a specific legal standard.  (*See* Doc. 20, pp. 11–12.)  Akin to Midland Funding, though, Zirpoli requests discovery as an alternative, "if the [c]ourt does not deny" the motion.  (*Id.* at 18.)

The complaint is silent on the existence of any arbitration agreement, much less an agreement to arbitrate between Zirpoli and Midland Funding.  Zirpoli also does not attach any documents to the complaint.  Nor does Zirpoli expressly reference any documents in the complaint.  Thus, based on the complaint, it is unclear whether Zirpoli's claims are subject to an enforceable arbitration agreement.

At the same time, in responding to Midland Funding's motion, Zirpoli does not deny that he signed the Note or Arbitration Agreement.  Nor does Zirpoli contest the documents' terms or validity.  Yet, in contesting Midland Funding's

motion, Zirpoli relies on arguments under Pennsylvania law[2], as well as evidence extraneous to the complaint, *see* Doc. 21, that further call into doubt the existence of an agreement to arbitrate between the parties.   For these reasons, rather than keep it pending, the court will deny Midland Funding's motion without prejudice and order limited discovery.   The court will also permit Midland Funding to file a subsequent motion to compel arbitration, if appropriate, that will be considered under the Rule 56 legal standard.

## B.    The Need For Factual Development

As mentioned, Zirpoli's arguments cast doubt on the arbitrability of his claims under the Arbitration Agreement.   Zirpoli argues that Midland Funding does not validly own the Loan Account, the Loan Account was not fully assigned to Midland Funding, and Midland Funding otherwise lacks standing to compel arbitration due to the lack of evidence of chain of title.   To adequately assess Zirpoli's arguments against compelling arbitration, however, factual development is required, especially on the following issues:

- Whether the Secretary of Banking approved the purported transaction involving Midland Funding, an unlicensed consumer-discount company. *See* 7 P.S. § 6214.I ("A licensee may not sell contracts to a person or corporation not holding a license under this act without the prior written approval of the Secretary of Banking.");

---

[2] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally should apply ordinary state-law principles that govern the formation of contracts.").

- Whether, in accordance with the terms of the Sale Agreement, *see* Doc. 18-6, p. 15, Midland Funding obtained approval to compel arbitration with Zirpoli; and,

- Whether Midland Funding maintains a clear chain of title to the Loan Account.

The parties should endeavor to explore these issues, and others they believe prudent, during the limited-discovery period.

### C.    The Court Can Decide Whether An Arbitration Agreement Exists Between The Parties

As a final matter, for the court to rule on a motion to compel arbitration in this case, it appears that it will be necessary to determine <u>who</u> has the authority to decide whether an agreement to arbitrate exists between Zirpoli and Midland Funding.  That is why the court ordered the parties to file supplemental briefing to address the following issue: "Despite the purported delegation clause [in the Arbitration Agreement], must the court still decide whether an arbitration agreement exists (i.e., whether Midland is a party to the arbitration agreement) before ordering any arbitration?" (Doc. 26.)

It is clear that "arbitration is a matter of contract and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  Accordingly, "parties may delegate ['gateway questions of arbitrability,' i.e., whether an agreement covers a particular

controversy,] to [an] arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* (citing *First Options*, 514 U.S. at 944). When the "parties' contract [clearly and unmistakably] delegates the arbitrability question to an arbitrator, a court may not override the [delegation clause]," *Henry Schein*, 139 S. Ct. at 529, "unless a party [specifically] challenge[s] the delegation clause and the court concludes that the delegation clause is not enforceable," *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (citation omitted) (alterations in original).

The court construes Zirpoli's arguments as concerning the issue of whether an agreement to arbitrate <u>exists</u> between him and Midland Funding. (*See also*, *e.g.*, Doc. 30, p. 1) ("The Court should deny Midland's motion . . . for Midland's failure to prove it is a party to the Agreement."). Contrary to Midland Funding's view, *see* Doc. 24, pp. 6–7 & Doc. 29, that issue is distinct from issues concerning enforceability, validity, or scope. *See Khath v. Midland Funding, LLC*, 334 F. Supp. 3d 499, 512 (D. Mass. 2018) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)) ("Distinct from the issue of whether an agreement was concluded is the question of whether a concluded agreement is valid and enforceable.").[3]

---

[3] Midland Funding cites to an unpublished three-judge panel decision from the Sixth Circuit, *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394 (6th Cir. 2017). In that case, the panel treated the appellants-debtors' arguments concerning the validity of assignment of arbitration

While the court is unaware of Supreme Court or Third Circuit authority directly on point, the court is of the view that it has the authority to address the "existence issue" before compelling arbitration, even though a delegation provision might exist and could go unchallenged.  In reaching this conclusion, the court takes guidance from the opinion in *Henry Schein*.  There, the Supreme Court explained:

> Archer and White interprets [Sections 3 and 4 of the FAA] to mean, in essence, that a court must always resolve questions of arbitrability and that an arbitrator never may do so. But that ship has sailed.  This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. *First Options*, 514 U.S., at 944 (alterations omitted); *see also Rent-A-Center*, 561 U.S. at 69, n.1.  To be sure, **before** referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement **exists**. *See* 9 U.S.C. § 2.  **But if** a valid agreement **exists, and if** the agreement **delegates** the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

139 S. Ct. at 530 (all emphasis added); *see Williams v. Medley Opportunity Fund II, LP*, Nos. 19-2058 & 19-2082, slip op. at 15, n. 7 (3d Cir. July 14, 2020) (precedential) (agreeing that "*Henry Schein* 'did not change . . . the rule that courts must first decide whether an arbitration agreement exists at all.'") (quoting *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019)); *see also HealthplanCRM, LLC*, 2020 WL 2028261 at *12–13 (determining that an

---

agreements as "enforceability issues," covered by delegation provisions.  *Id.* at 397–98.  The panel, however, seemingly implied that, but for the appellants' failure to "clearly argue that their challenges [concerned] the formation of the arbitration agreements," a different approach – perhaps like the one taken here – might have been appropriate.  *See id.* Regardless, *Danley* is not binding authority and the court disagrees that Zirpoli's arguments concern enforceability.

agreement existed between the plaintiff and a non-signatory defendant before compelling arbitration, despite previously recognizing the presence of a delegation provision).[4]

It would fly in the face of the basic notion that "arbitration is a matter of contract" premised on contract terms, *Henry Schein*, 139 S. Ct. at 529, if the court compelled Zirpoli to arbitration without first deciding whether an agreement exists with Midland Funding as an assignee or through other means. *See also Bel-Ray Co. v. Chemrite (Pty.) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). For example, under the Arbitration Agreement that Midland Funding attaches, Zirpoli purportedly agreed to arbitration with OneMain's "assignees," among other entities. But if Midland Funding is not a true "assignee" (or does not validly hold

---

[4] While the circumstances might have differed to some degree, other District Courts have reached similar conclusions in cases that also involved Midland Funding and/or Midland Credit. *See Khath*, 334 F. Supp. 3d at 513 (concluding that the magistrate judge correctly analyzed the issue of whether an agreement existed between the parties before enforcing the delegation clauses and ordering arbitration); *Ford v. Midland Funding, LLC*, 264 F. Supp. 3d 849, 854–55 (E.D. Mich. 2017) (considering, over the defendants' argument that the issue of contract formation was delegated to an arbitrator, whether the parties assented to credit-card agreement that contained an arbitration clause); *see also Barbosa v. Midland Credit Mgmt., Inc.*, No. 18-11997, 2019 WL 3781629, at *4 (D. Mass. July 3, 2019) (quoting *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11-MD-2286, 2019 WL 398169, at *6 (S.D. Cal. Jan. 31, 2019)) ("[A]s a matter of contract law, 'a delegation clause granting authority to an arbitrator to decide issues of application, enforceability, or interpretation are only applicable to the parties of the agreement.'"); *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 940–42 (E.D. Tenn. 2017) (finding that Midland Credit was a party to agreement before considering the effect, if any, of delegation provisions).

the Loan Account and any associated arbitration rights), as Zirpoli presently contends, then Midland Funding would not be a party to the Arbitration Agreement.  And it would follow that no agreement to arbitrate exists between Zirpoli and Midland Funding.

Thus, the court disagrees with Midland Funding that Zirpoli's arguments concern issues that should be decided by an arbitrator, at least based on the possible existence of a delegation provision in the Arbitration Agreement.  If accepted, Midland Funding's argument would result in the court bypassing a critical step under the FAA.  As a result, if Midland Funding renews its motion and rests on language from (or similar to) the Arbitration Agreement that might contain a delegation provision, the court will decide whether an agreement to arbitrate exists between the parties.  And that will be the case even if Zirpoli does not specifically challenge the delegation provision.

## CONCLUSION

Consistent with the above, **IT IS ORDERED** that Midland Funding's motion to compel individual arbitration and stay these proceedings, Doc. 18, is **DENIED**.  This denial is without prejudice to Midland Funding renewing its motion, if appropriate, at the end of a limited-discovery period.  The court will review any renewed motion that Midland Funding files under the Rule 56 standard

of review.  With respect to the scheduling of the limited discovery period, the court

will enter a subsequent order that sets a conference call with the parties.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 15, 2020