# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN ZIRPOLI, individually and :    Civil No. 1:19-CV-01428
on behalf of all others similarly situated, :
                                 :
          Plaintiff,            :
                                 :
          v.                   :
                                 :
MIDLAND FUNDING LLC and       :
MIDLAND CREDIT MANAGEMENT, :
INC.,                                :
                                 :
          Defendants.        :    Judge Jennifer P. Wilson

## MEMORANDUM

Before the court is Defendants' renewed motion to compel arbitration and to stay. (Doc. 37.) This action was brought by Plaintiff, Benjamin Zirpoli ("Zirpoli"), to recover damages for, *inter alia*, alleged violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Unfair Trade Practices and Consumer Protection law by Defendants, Midland Funding LLC ("Midland Funding") and Midland Credit Management, Inc. ("Midland Credit") (collectively, "Midland"). (Doc. 1, ¶ 1.) Midland has re-moved to compel arbitration in this case, arguing that Zirpoli's claims are subject to an arbitration agreement. (Doc. 37.) The court finds that there was not a valid assignment of Zirpoli's loan account, and that Midland is not entitled to compel arbitration in this case. The court will therefore deny the motion to compel arbitration and will deny the motion to stay as moot. (Doc. 37.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Midland is a purchaser of defaulted consumer debt, which then seeks to collect these debts by calling customers, sending letters, filing lawsuits, and reporting information about consumers to credit reporting agencies. (Doc. 1, ¶¶ 9, 11.) In March 2018, Midland allegedly filed suit against Zirpoli, claiming that it had purchased a defaulted loan that Zirpoli had taken out with OneMain Financial ("OneMain").[1] (*Id.* ¶¶ 13–14.) Zirpoli claims that he retained an attorney for this litigation and entered a defense, but that Midland voluntarily dismissed the lawsuit. (*Id.* ¶¶ 15–16.) Despite dismissing the lawsuit, Zirpoli alleges that Midland has continued to report the loan to "various consumer reporting agencies, including TransUnion and Equifax, in an ongoing attempt to collect" on the allegedly defaulted loan, doing so as recently as May 2019. (*Id.* ¶¶ 17–18.)

Zirpoli claims that this lawsuit, Midland's reports to various consumer reporting agencies, and Midland's procurement of his credit report were impermissible because Midland was not lawfully permitted to purchase the loan. (*Id.* ¶¶ 20, 24–26.) Zirpoli's loan was issued under the Consumer Discount

---

[1] The complaint alleges that "OneMain Financial is a consumer discount company regulated by the Consumer Discount Company Act" which "makes, buys, or sells consumer loans in amounts under $25,000 with combined fees, interest, charges, and other amounts that aggregate in excess of 6% per year." (Doc. 1, ¶¶ 21–22.)

Company Act ("CDCA"), 7 PA. CONS. STAT. §§ 6201−6219 (1937), a consumer protection statute serving as an exception and a corollary to Pennsylvania's usury law. (*Id.* ¶ 28.) Zirpoli asserts that Midland was unlicensed to purchase CDCA loans, and therefore, "[t]o the extent [Midland] purchased any CDCA loans from any consumer discount company, those purchases are unlawful and the underlying obligations are void." (*Id.* ¶ 27.)

On the basis of these facts, Zirpoli filed a complaint on August 16, 2019, alleging violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Fair Credit Extension Uniformity Act, and the Unfair Trade Practices and Consumer Protection Law. (Doc. 1.) On September 30, 2019, Midland filed an answer, later filing an amended answer on October 10, 2019. (Docs. 10, 14.) Thereafter, on November 18, 2019, Midland filed a motion to compel arbitration and to stay the proceedings, asserting that Zirpoli's claims are subject to a binding arbitration agreement. (Doc. 18.) The court denied this motion without prejudice on July 15, 2020, finding that it was not apparent from the face of the complaint that Zirpoli's claims were subject to a valid and enforceable arbitration agreement and that factual development was otherwise necessary on Zirpoli's claims. (Doc. 31.) The court ordered additional, limited discovery focused on the following issues:

> Whether the Secretary of Banking approved the purported transaction involving Midland Funding, an unlicensed consumer-discount

company. *See* 7 P.S. § 6214.I ("A licensee may not sell contracts to a person or corporation not holding a license under this act without the prior written approval of the Secretary of Banking.");

Whether, in accordance with the terms of the Sale Agreement, *see* Doc. 18-6, p. 15, Midland Funding obtained approval to compel arbitration with Zirpoli; and,

Whether Midland Funding maintains a clear chain of title to the Loan Account.

(Doc. 34, pp. 11–12.)[2]

This discovery, attached to the instant renewed motion to compel arbitration, revealed in pertinent part that the Pennsylvania Secretary of Banking did not approve the assignment between OneMain and Midland. (Doc. 42-2, pp. 6, 11.) In addition, the discovery established that Midland was not licensed under the CDCA during the time period at issue in this litigation. (*Id.* at 8, 10–11.)

On October 30, 2020, Midland filed a renewed motion to compel arbitration and to stay proceedings, arguing that the right to compel arbitration was one of the rights that it received as part of the purchase agreement with OneMain for Zirpoli's loan account. (Docs. 37, 38.) On November 13, 2020, Zirpoli filed a brief in opposition, renewing his objection to the motion based on the argument that the assignment between OneMain and Midland was illegal and void. (Doc. 41.) Midland timely filed a reply brief. (Doc. 43.) Thus, this motion is ripe for review.

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

The court has original jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332 as the parties have complete diversity and the amount in controversy

exceeds $75,000. Further, venue is appropriate because the action detailed in the

complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides the "body of federal

substantive law establishing . . . the duty to honor agreements to arbitrate

disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584

F.3d 513, 522 (3d Cir. 2009). Section 2 of the FAA states that "[a] written

provision in . . . a contract evidencing a transaction involving commerce to settle

by arbitration a controversy . . . arising out of such contract [or] transaction . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 requires

courts, upon motion, to stay litigation "upon being satisfied that" the issues

involved are "referable to arbitration" under a written arbitration agreement. *Id.* §

3. The stay shall remain in effect until the arbitration, in accordance with the

arbitration agreement, concludes. *See id.* Furthermore, under Section 4, "[a] party

aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written [arbitration] agreement . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Generally, "in deciding whether a party may be compelled to arbitrate under the FAA, [courts must] consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem.*, 584 F.3d at 527). The legal standard that applies to motions to compel arbitration depends on the circumstances. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 316 (W.D. Pa. 2011).

District courts review motions to compel arbitration under the rubric of either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit explained that "when it is apparent, based on 'the face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause,' a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Conversely, "if the

complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question [under the Rule 56 standard].'" *Id.* (emphasis added) (first alteration in original). Thereafter, if summary judgment is not warranted, the court may proceed summarily to a trial. *Id.* (quoting 9 U.S.C. § 4).

In this case, the court found that the complaint was silent with respect to the existence of an arbitration agreement, that no documents were attached to the complaint, and that the complaint did not expressly reference any documents. (Doc. 31, p. 10.) Thus, in accordance with *Guidotti*, the court ordered additional, limited discovery focused on the following issues:

> Whether the Secretary of Banking approved the purported transaction involving Midland Funding, an unlicensed consumer-discount company. *See* 7 P.S. § 6214.I ("A licensee may not sell contracts to a person or corporation not holding a license under this act without the prior written approval of the Secretary of Banking.");
>
> Whether, in accordance with the terms of the Sale Agreement, *see* Doc. 18-6, p. 15, Midland Funding obtained approval to compel arbitration with Zirpoli; and,
>
> Whether Midland Funding maintains a clear chain of title to the Loan Account.

(*Id.* at 11–12.)  The parties have conducted this discovery and Midland has filed a renewed motion to compel arbitration.  The court therefore applies the summary judgment standard of review to this motion.

### B. Motion for Summary Judgment Under Federal Rule of Civil Procedure 56

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

Initially, the court reiterates that it has the authority to determine whether an arbitration agreement exists between Zirpoli and Midland. As the court explained when ordering preliminary discovery in this case, while "parties may delegate ['gateway questions of arbitrability,' i.e., whether an agreement covers a particular controversy,] to [an] arbitrator," they must do so by "'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, when the "parties' contract [clearly and unmistakably] delegates the arbitrability question to an arbitrator, a court may not override the [delegation clause]," *Henry Schein*, 139 S. Ct. at 529, "unless a party [specifically] challenge[s] the delegation clause and the court concludes that the delegation clause is not enforceable." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (cleaned up).

The court found that Zirpoli contested the existence of a valid agreement to arbitrate between himself and Midland since he asserted that Midland was not a valid assignee of the contract between himself and OneMain. The court remains unaware of any Supreme Court or Third Circuit authority directly on point, and

maintains its view that it has the authority to address the "existence issue" before compelling arbitration in this case, even though an unchallenged delegation provision exists. (*See* Doc. 31, pp. 12–16.) In reaching this conclusion, the court reiterates the Supreme Court's guidance from *Henry Schein*, in which the Court explained:

> [Defendant] interprets [Sections 3 and 4 of the FAA] to mean, in essence, that a court must always resolve questions of arbitrability and that an arbitrator never may do so. But that ship has sailed. This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. *First Options*, 514 U.S., at 944 (alterations omitted); *see also Rent-A-Center*, 561 U.S. at 69, n.1. **To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.** *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

139 S. Ct. at 530 (emphasis added); *see Williams v. Medley Opportunity Fund II, LP*, Nos. 19-2058 & 19-2082, slip op. at 15, n. 7 (3d Cir. July 14, 2020) (precedential) (agreeing that "*Henry Schein* 'did not change . . . the rule that courts must first decide whether an arbitration agreement exists at all.'") (quoting *Lloyd's Syndicate 457 v. FloaTEC, LLC*, 921 F.3d 508, 515 n.4 (5th Cir. 2019)); *see also HealthplanCRM, LLC*, 2020 WL 2028261 at *12–13 (determining that an agreement existed between the plaintiff and a non-signatory defendant before compelling arbitration, despite previously recognizing the presence of a delegation provision).

The court maintains that Zirpoli has placed the validity of an arbitration agreement between himself and Midland at issue by asserting that Midland is not a valid assignee, and is therefore not a party to the contract between Zirpoli and OneMain setting forth the arbitration provision and the delegation clause. Absent privity of contract between Midland and Zirpoli, Midland cannot compel Zirpoli to arbitrate his claims. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 U.S. Dist. LEXIS 70299, at *26 (D.N.J. May 8, 2017); *Cumberland-Perry Area Vocational-Technical School Authority v. Bogar & Bink*, 396 A.2d 433, 434–35 (Pa. Super. Ct. 1978). Thus, the court turns to the issue of whether a valid assignment occurred in this case. In order to determine the validity of this assignment, it is necessary to examine the statutory framework that regulates CDCA loans.

### A. The CDCA Framework

Under Pennsylvania law, "[i]t is well established that public policy . . . prohibits usurious lending, and this prohibition has been recognized for over 100 years." *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 8 A.3d 282, 292 (Pa. 2010) (citing *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 759 (Pa. 2008)). Therefore, under Pennsylvania's usury law, the Loan Interest and Protection Law ("LIPL"), "the maximum lawful rate of interest that a lender may

charge for the loan or use of money in the amount of $50,000 or less is six percent per year." *Id.* (citing 41 PA. CONS. STAT. § 201).

The CDCA serves as an exception to this general rule by allowing entities that are "in the business of negotiating or making loans" to charge or collect "interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of" six percent per year on personal consumer loans under $25,000, up to approximately 24 percent per year. *Id.* at 285, 292; 7 PA. CONS. STAT. §§ 6203.A;[3] 6213.E. Thus, "[r]ead together, the LIPL and the CDCA limit the amount of interest lenders may charge on loans under $25,000." *Cash Am. Net of Nev. LLC*, 8 A.3d at 285. It is possible to violate the CDCA without violating the LIPL. *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 762 (Pa. 2008).

Under the CDCA, a CDCA-licensed entity "may not sell contracts to a person or corporation not holding a license under this act without the prior written approval of the Secretary of Banking." 7 PA. CONS. STAT. § 6214.I. This prohibition on transfer of CDCA loans to non-licensed entities also appears in the

---

[3] Specifically, section 3A of the CDCA provides that ". . . no person shall engage or continue to engage in this Commonwealth . . . in the business of negotiating or making loans or advances of money on credit, in the amount or value of twenty-five thousand dollars ($25,000) or less, and charge, collect, contract for or receive interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed under this act . . . . 7 PA. CONS. STAT. § 6203.A.

CDCA's implementing regulations. *See* 10 PA. CODE § 41.6 ("A licensee may not sell or otherwise dispose of contracts to a person or corporation not holding a license under the act, unless prior written approval is obtained from the Administrator."). Even if a non-CDCA-licensed entity receives Department approval for the sale of a CDCA loan, this entity may not charge or collect more than the 6 percent interest rate set forth in the LIPL. 10 PA. CODE § 41.6 ("[t]he privilege of collecting the charges authorized by the [CDCA] may not be transferred to an unlicensed purchaser.")

Despite this clear guidance that a CDCA-licensed entity may not transfer a CDCA loan to a non-licensed entity without prior approval from the Secretary of Banking, the statute and implementing regulations do not set forth the consequences for a CDCA loan assignment from a licensed entity to a non-licensed entity without prior Department approval. The court is likewise unaware of any Pennsylvania courts to have decided this issue. This places the court in the position of predicting how the Pennsylvania courts might rule on this issue.

The court finds that an unreported case from the Western District of Pennsylvania and an unreported decision from the Pennsylvania Superior Court are topical, well-reasoned, and persuasive in this case.[4] *See Mellish v. CACH, LLC*,

---

[4] The court acknowledges that these cases are not binding authority. However, in light of the dearth of relevant, binding authority on the issue presented, the court finds these cases persuasive and helpful.

No. 19-1217, 2020 U.S. Dist. LEXIS 52383, at *5–12 (W.D. Pa. Mar. 26, 2020);

*Snyder v. Ngo*, No. 1389 EDA 2012, 2013 Pa. Super. Unpub. LEXIS 1183, at

*10–11 (Pa. Super. Ct. Mar. 19, 2013). In addition, the court notes that the

Department of Banking has addressed this issue in an interpretive letter issued in

2001, which the court references as well.[5] *See* Pennsylvania Department of

Banking, Interpretive Letter (Nov. 19, 2001).

In *Mellish*, a case strikingly similar to the instant case, the Western District

was tasked with determining the applicability of the CDCA to a CDCA loan that

was sold to an unlicensed purchaser without prior approval from the Department of

Banking.[6] 2020 U.S. Dist. LEXIS at *2. The plaintiff sought to have the sale set

aside as "void and legally unenforceable" because Department approval had not

been obtained. *Id.* at *3 (quotation marks omitted). Turning to the same authority

the undersigned relies upon, the court agreed, noting that "[i]f [the unlicensed

entity] did not get approval from the Department before purchasing the loan

account, then [this entity] could not lawfully purchase the loan account, thereby

---

[5] The court recognizes that section 202.D of the Department of Banking Code "authorizes the Department to issue 'statements of policy and interpretive letters' regarding the CDCA, which do not have the force of law." *Cash Am. Net of Nev., LLC*, 8 A.3d at 297 (quoting 71 PA. CONS. STAT. § 733-202.D). However, in the absence of other controlling precedent available, the court finds the Department's interpretive letter helpful and persuasive.

[6] The court notes that *Mellish* was decided on a motion to dismiss—a different procedural posture than the instant case. Nevertheless, the court finds the analysis and reasoning applied in *Mellish* equally applicable in this case given the similarity of the issues.

causing the sale contract between [the licensed entity] and [the unlicensed entity] to have an illegal purpose. The sale contract is therefore void and unenforceable." *Id.* at *11.

Similarly, in *Snyder*, the Pennsylvania Superior Court drew a distinction between contracts which are "illegal in the sense that the making of the contract violates some statutory prohibition, and a contract which is illegal because it calls for the performance of acts which are in themselves violations of the law." 2013 Pa. Super. Unpub. LEXIS 1183, at *10–11 (quoting *Webber v. Borough of Midway*, 211 A.2d 45, 46 (Pa. Super. Ct. 1965)) (quotation marks omitted). Thus, a term in an otherwise legally valid loan contract that called for the collection of usurious interest issued by a person unlicensed under the CDCA could have the illegal term set aside as voidable without the "single illegal term necessarily render[ing] the whole agreement void." *Id.* at *11.

Finally, when called upon to address, inter alia, the consequences of not obtaining a CDCA license when required by law to do so, the Department of Banking issued an interpretive letter in which it opined that "a CDCA loan contract that has been bought by a person not holding a CDCA license and not otherwise authorized to buy CDCA loan contracts may be declared void." Pennsylvania Department of Banking, Interpretive Letter, p. 13 (Nov. 19, 2001). The Department relied on existing Pennsylvania contract law and noted that "the

general rule that an agreement which ***violates a provision of a statute, or which***

***cannot be performed without violation of such a provision, is illegal and void***."

*Id.* (quoting *American Association of Meat Processors v. Casualty Reciprocal*

*Exchange*, 588 A.2d 491, 495–96 (Pa. 1991)) (emphasis in original). The

Department went on to state that:

> Given the Department's interpretation of Section 3.A, it is clear that a
> CDCA loan contract that has been purchased by a person who lacks the
> authority to do so cannot be performed without violating the CDCA.
> Therefore, such a CDCA loan contract might very well be void under
> the holding of *American*, *supra*.

*Id.* Thus, the Department concluded that "even though the CDCA does not

specifically state that loan contracts illegally sold to unauthorized people or entities

are void, a Pennsylvania court might easily conclude that the failure to obtain a

CDCA license to buy and sell CDCA loan contracts voids these CDCA contracts."

*Id.* at 14–15.

The Department also concluded that "[t]he difference between the typical

usury situation of paying excessive interest and . . . a person who buys and sells

CDCA loan contracts without the requisite CDCA license" is that the latter "has

evaded the licensing scheme set up by the General Assembly to protect

Pennsylvania consumers and may not in any way ever perform such CDCA

contracts in a lawful manner." *Id.* at 15. In essence, the Department stated the

conclusion reached in *Snyder*—that Pennsylvania courts recognize a difference

between contracts in which a term may be voidable and those which are formed for an illegal purpose and are considered void. In cases where a person "buys and sells CDCA loan contracts without the requisite CDCA license," it is the Department's view that such person may have entered into an illegal and void contract under Pennsylvania law.[7] *Id.*

Having set forth this framework for the CDCA, the court now turns to the question of whether OneMain validly assigned Zirpoli's loan contract to Midland.

## B. OneMain did not Validly Assign Zirpoli's Contract to Midland.

In this case, it is undisputed that Zirpoli took out a CDCA loan with OneMain carrying an interest rate of 26.91 percent. (Doc. 37-1, p. 8.) The validity of this original loan contract is not contested. Rather, Zirpoli contests the validity of the assignment of this original loan contract to Midland, an entity which does not possess a CDCA license.

The CDCA is clear that a CDCA-licensed entity "may not sell contracts to a person or corporation not holding a license under this act without the prior written approval of the Secretary of Banking." 7 PA. CONS. STAT. § 6214.I. In this case,

---

[7] The Department also noted that "courts in other states have specifically held that loan contracts issued by money lenders or creditors in violation of state licensing statutes are not enforceable in spite of the fact that the relevant statute did not expressly provide for such a consequence." Pennsylvania Department of Banking, Interpretive Letter, p. 14 (Nov. 19, 2001) (citing *Solomon v. Gilmore*, 731 A.2d 280 (Conn. 1999); *Derico v. Duncan*, 410 So. 2d 27 (Ala. 1982); *Levison v. Boas*, 150 Cal. 185 (1907); 29 A.L.R. 4th 884 (1984) ("Annotation: Failure of Moneylender or Creditor Engaged in Business of Making Loans to Procure License or Permit as Affecting Validity or Enforceability of Contract")).

Midland does not possess a CDCA license and neither party to the assignment requested advance written approval from the Secretary of Banking.  Therefore, the assignment violated the CDCA's restrictions on CDCA loan accounts.  In other words, the assignment contract could not have been lawfully made without prior Department approval which was lacking in this case.  Thus, the court finds that the assignment contract is void under Pennsylvania law.  *See Mellish*, 2020 U.S. Dist. LEXIS 52383, at *5–12 (holding that a sale contract for a CDCA loan in which an unlicensed purchaser did not obtain prior approval from the Secretary of Banking had an illegal purpose and was therefore void and unenforceable under Pennsylvania law); *Snyder*, 2013 Pa. Super. Unpub. LEXIS 1183, at *10–11 (implying that "a contract which is illegal in the sense that the making of the contract violates some statutory prohibition" is void); Pennsylvania Department of Banking, Interpretive Letter, p. 13 (Nov. 19, 2001) (noting that "a CDCA loan contract that has been bought by a person not holding a CDCA license and not otherwise authorized to buy CDCA loan contracts may be declared void").  Because the court finds that the assignment contract between OneMain and Midland is void, Midland lacks the right to compel arbitration in this case, and Midland's motion to compel arbitration and stay these proceedings will accordingly be denied.

### C. Midland's Remaining Arguments are Without Merit.

Midland raises three arguments against a finding that the assignment contract is void.  First, that Zirpoli lacks standing to challenge the validity of the assignment contract; second, that the CDCA is inapplicable to Midland and this case in general; and third, that the assignment contract contained a severability provision which should salvage Midland's right to arbitrate any disputes arising from the loan contract.  (Doc. 38.)  The court addresses these arguments seriatim.

### 1. Zirpoli has Standing to Challenge the Assignment.

Midland first argues that Zirpoli lacks standing to challenge the assignment between OneMain and Midland because Zirpoli was not a party to this agreement, nor was he a third-party beneficiary.  (Doc. 38, p. 22.)  Midland does not appear to contest Zirpoli's standing to maintain his lawsuit; rather, Midland specifically challenges Zirpoli's standing to contest the assignment.  (*Id.*)

Because Article III of the United States Constitution only allows federal courts to decide cases and controversies, a petitioner must have standing to bring a claim in federal court.  *DOC v. New York*, __ U.S. __, 139 S. Ct. 2551, 2565 (2019).  To establish standing, a petitioner must show that he has "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision."  *Va. House of Delegates v. Bethune-Hill*, __ U.S. __, 139 S. Ct. 1945, 1950 (2019) (citing *Hollingsworth v.*

*Perry*, 570 U.S. 693, 704 (2013)).  An injury is concrete and particularized if it "affects the [petitioner] in a personal and individual way."  *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The petitioner's injury "must be 'de facto'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016).

Midland has not contested Zirpoli's standing to bring this lawsuit and the court independently finds that Zirpoli does have standing in this case.  Zirpoli suffered a concrete and particularized injury when his credit was damaged due to Midland's adverse credit reporting and had to pay an attorney to defend the lawsuit instituted by Midland.  This injury would not have occurred but for the purported assignment from OneMain to Midland.  A favorable decision for Zirpoli could make him whole.  Thus, Zirpoli has satisfied the elements required for standing in this case.  Given Zirpoli's standing to bring this lawsuit, the court finds that Zirpoli clearly has standing to contest Midland's ability to compel him to arbitrate his claims.  Indeed, Midland cannot compel arbitration in this case absent privity between itself and Zirpoli.  *See In re Volkswagen*, 2017 U.S. Dist. LEXIS 70299, at *26; *Cumberland-Perry Area Vocational-Technical School Authority*, 396 A.2d at 434–35.  Zirpoli has contested that this privity exists, and the court has found

that it does not.  Therefore, the court will deny the motion to compel arbitration on

this additional ground.

## 2.     The CDCA Applies to Midland and this Case.

Midland argues that section 17 of the CDCA plainly states that the act is

inapplicable to corporations otherwise licensed by the Secretary of Banking under

the provisions of any other statutory scheme.  (Doc. 38, p. 24.)  Midland argues

that because it maintains a sales finance license with the Department of Banking, it

was able to purchase Zirpoli's loan account without violating the CDCA.  (*Id.*)

Section 17 of the CDCA states, in pertinent part, that:

> This act shall not affect any existing laws, special or general,
> authorizing a charge for the loan of money in excess of interest at the
> legal rate.  This act shall not apply to any person, persons, partnership,
> association or corporation operating under the laws related to banking
> institutions, building and loan associations, credit unions or licensed
> under the Small Loans Act, . . . and supplements or amendments, or
> licensed by the Secretary of Banking of the Commonwealth of
> Pennsylvania under the provisions of any other statute.

7 PA. CONS. STAT. § 6217.  The court reads this section as stating that the

limitations and requirements of the CDCA do not impact other statutory provisions

governing lending in excess of the rate provided by Pennsylvania's usury law.

Thus, the limitations and requirements for licensing under the CDCA do not affect

those licensing requirements under other statutory provisions.  In other words,

Midland's other Department of Banking license under other statutory scheme(s) is

unaffected by the provisions of the CDCA.

Moreover, regardless of whether Midland is subject to the CDCA, the court finds that the important fact in this case is that Zirpoli's loan account is subject to the CDCA. Zirpoli's loan was disbursed under the auspices of the CDCA since it contained a 26.91 percent interest rate and was issued by OneMain—an entity that was authorized to exceed to the 6 percent cap under the LIPL. The CDCA thus applies to Midland because it chose to purchase CDCA loan accounts, and thus subject itself to this statute because it is clear that the CDCA restricts the sale of CDCA loan accounts to unlicensed purchasers. *See* 7 PA. CONS. STAT. § 6214.I. The court's conclusion that Midland is subject to the CDCA by virtue of its purchase is supported by the Department of Banking's 2001 interpretive letter. *See* Pennsylvania Department of Banking, Interpretive Letter, pp. 6–17 (Nov. 19, 2001) ("The Department has consistently interpreted the CDCA as governing the sale of CDCA loan contracts."). Thus, the court finds that Midland is subject to the CDCA and denies Midland's motion to compel arbitration on these additional grounds.

### 3. The Court will not Sever the Illegal Portions of the Assignment Contract.

Finally, Midland argues that the court should set aside the illegal portions of the assignment agreement, if any, and salvage its right to compel arbitration because this right does not violate the CDCA and was validly transferred to Midland. (Doc. 38, pp. 26–27.) Specifically, Midland asserts that the severability

clause in the assignment contract enables the court to remove the portions of the contract which are illegal and enforce those remaining provisions, including the right to compel arbitration. (*Id.*)

The court may be more sympathetic to Midland's argument in favor of severability if the facts of this case resembled *Snyder*, i.e., if Midland had issued the original loan to Zirpoli at a rate of interest in excess of what it was legally allowed to collect. However, this is not a case where a single portion of the assignment contract can be severed to leave the remainder of the terms intact. Here, the entire assignment contract between OneMain and Midland is illegal and void, including the right to compel arbitration, because the making of the assignment contract itself violated the CDCA. *Compare Snyder*, 2013 Pa. Super. Unpub. LEXIS 1183, at *10 *with Mellish*, 2020 U.S. Dist. LEXIS 52383, at *11; *see also* Pennsylvania Department of Banking, Interpretive Letter, pp. 13–15 (Nov. 19, 2001). Thus, the court will deny the motion on these additional grounds.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration will be denied and the motion to stay will be denied as moot. (Doc. 37.) An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 7, 2021